## CASCADEN et al. v. BORTOLIS.

### (Circuit Court of Appeals, Ninth Circuit. May 18, 1908.)

#### No. 1,442.

MINES AND MINERALS—LOCATION OF MINING CLAIMS—SUFFICIENCY OF DISCOVERY—EVIDENCE.

Upon an issue as to whether there was a sufficient discovery of mineral in a mining claim to meet the requirement of the statute and support a location, where there was evidence that gold had actually been found within the limits of the claim, sufficient to warrant the submission of the case to the jury to determine whether the discovery was sufficient within the rule which requires it to be such as to justify an ordinarily prudent man, not necessarily a miner, in expending his time and money in the development of the property, the locator was entitled to supplement such evidence by showing the situation, character, and value, and mineralogical conditions of adjacent claims, and to prove by the opinions of experienced miners, based upon the facts, that the discovery was sufficient to justify him in developing the claim.

[Ed. Note.—Sufficiency of discovery of mineral characteristics to support mining location, see note to Lange v. Robinson, 79 C. C. A. 6.]

In Error to the District Court of the United States for the Third Division of the Territory of Aslaka.

Louis K. Pratt, for plaintiffs in error.

T. C. West and Heilig & Tozier, for defendant in error.

Before GILBERT, Circuit Judge, and DE HAVEN and HUNT, District Judges.

HUNT, District Judge. Upon the former hearing of this cause, judgment in defendant's favor was reversed for error in the instructions. Cascaden v. Bartolis, 146 Fed. 739, 77 C. C. A. 496. New trial having been had, defendant again prevailed, and again plaintiffs have brought the case here.

The action was brought by John Cascaden, John Bernstein, Richard Stein, Louis K. Pratt, and Carl A. Johanson, plaintiffs in error, to recover from Joseph Bortolis, defendant in error, two certain lots in the town known as Gate City, Alaska. The complaint prayed that plaintiffs be adjudged the owners of and entitled to the possession of the lots described, and that defendant be adjudged to have no right or title thereto, and that he be removed therefrom. Plaintiffs set forth that

they owned the lots as against all persons except the United States, and that in September, 1904, the defendant went upon them and withheld possession from plaintiffs, and that he has built buildings thereon and claims to own the same. The amended answer denied the allegations of ownership, and set forth that in September, 1904, the defendant entered the land described in plaintiffs' complaint, which was vacant, unappropriated public land. Defendant admitted that he occupied the premises, and set forth that the cabins he built were situated within what was known as the town site of Gate City, where a large number of buildings had been erected, and that it was the intention of the occupants of the land upon which the town was situated to enter the same for town site purposes and secure patent therefor, in accordance with the act of Congress in such cases made and provided. Defendant claimed ownership, and right of possession of the cabins and grounds. Plaintiffs' replication denied that the land described in the pleadings was vacant and unappropriated public land.

The principal question involved and submitted to the jury upon the last trial, as upon the first, was whether or not there had been such a finding of mineral in the placer claim, under which the plaintiffs asserted their rights, as would satisfy the laws of the United States (Rev. St. U. S. § 2320 [U. S. Comp. St. 1901, p. 1424]), which provide, among other things, that no location of a mining claim shall be made until discovery of mineral within the limits of the claim located. Was there such a discovery of mineral as gave reasonable evidence of the fact that the ground was valuable for placer mining? Chrisman v. Miller, 197 U. S. 313, 25 Sup. Ct. 468, 49 L. Ed. 770. The lower court having been of the opinion that plaintiffs made a sufficient showing to submit the question of discovery to the jury, charged, among other things, that there must be a discovery of gold or other mineral upon the ground included within the locator's claim, and said:

"What is 'discovery'? What finding of mineral on a placer mining claim is sufficient to satisfy that clause of the statute which provides that 'no location of a mining claim shall be made until the discovery of the mineral within the limits of the claim located?' Where mineral has been found upon a placer mining claim, and the evidence thereof is of such a character that a person of ordinary prudence, not necessarily a skilled miner, would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a mine thereon, the requirements of the statute have been met. To hold otherwise would tend to make of little avail, if not entirely nugatory, that provision of the law whereby 'all valuable mineral deposits in lands belonging to the United States * * * are * * * described to be free and open to exploration and purchase.' It is not a fair criterion that the locator says he is willing to further expend his labor and means in seeking for mineral thereon. The question should not be left to his arbitrary will or statement, but the facts which are within the observation of the discoverer and which induce him to locate should be such as to justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property. Mere slight indications of the existence of mineral in the ground, a mere possibility that it contains gold, is not enough to justify a prudent person in the expenditure of money and labor in its exploration. There must be such a discovery of mineral on the claim as to satisfy you that an ordinarily prudent man, not necessarily a miner, would be justified in expending his time and labor thereon in the development of the property; and unless you are so satisfied in this case by a fair preponderance of the evidence, you should find a verdict for the de-

fendant. * * * You are instructed that evidence of mining, extensive or otherwise, or of the value of gold deposits, on other and adjacent claims, must not be accepted by you as evidence of a discovery on the plaintiffs' claim. Such knowledge might have justified the plaintiff Cascaden in locating the ground in dispute in the hope that it, too, contained gold; but such facts are not evidence of the existence of gold on the claim in dispute. The proofs of discovery must be such as to establish the fact of finding mineral on the claim in dispute, within its outer boundaries. It must be a finding of mineral in fact, and not in theory; and the mineral found must be in such quantity and found under such circumstances and conditions as would justify a man of ordinary prudence, not necessarily a skilled miner, in the further expenditure of his time and money in further work and labor in developing the claim If plaintiff Cascaden, or any of the plaintiff's employés, did so find mineral on that claim to that extent. it is sufficient to constitute a discovery, and you should so find. But proof of finding gold in large or small quantities on other claims is not evidence of a discovery on the claim in dispute, and you should not so consider it."

It will be observed that the first portion of the instruction quoted, wherein the court discusses what constitutes discovery, is substantially a reiteration of the rules approved of by this court in Cascaden v. Bartolis, supra, where the principle was laid down that, to constitute a valid location, there must be such a discovery of mineral as that an ordinarily prudent man, not necessarily a miner, would be justified in expending his time and money thereon in the development of the property; while in the latter part of the instruction the court expressly charged that evidence of the value of gold deposits on other and adjacent claims was not evidence of a discovery on the plaintiffs' claim, although it was charged that such knowledge might have justified the plaintiffs in locating the ground in dispute in the hope that it contained gold, but that such facts were not evidence of the existence of gold on the claim in dispute.

Upon the trial of the case, plaintiffs sought to prove by witnesses called to the stand that a large amount of gold had been extracted in the mining of claims in the immediate vicinity of the one involved in the suit But the court rejected the plaintiffs' offer. Plaintiffs contended that such evidence was admissible as a circumstance to be considered with the positive testimony of the plaintiffs and their witnesses that gold was found within the claim as staked. Counsel stated that he wished to show that the "neighborhood was gold-bearing ground, immensely rich deposits." Continuing, he said:

"We have shown the character of the explorations we have made, and the kind of looking ground we got. I will show that the débris coming out of these shafts, where these valuable deposits have been found and demonstrated, is similar. I will connect it in that way. I will connect it with the configuration of that country up there, especially in connection with Wolf creek."

Plaintiffs further sought to prove the familiarity of experienced mining men with the workings and the results of the workings on the creek below the Cascaden claim, and upon the benches thereabouts, in order to introduce opinions whether, if as a fact Cascaden knew at the time of his location of the result of work upon Discovery and Discovery Bench, and the Hilty Fraction claim near by, it would have influence in causing a prudent man to locate the ground as mining ground. The court sustained the objection to such testimony, and refused the offer of

plaintiffs to prove in a general way the lay of the ground in which the Cascaden claim was situated.

A witness was also called to prove that a drift had been driven upon an adjacent claim close to the lower side line of plaintiffs' claim, as tending to show that there had been gold discovered in valuable quantities upon adjacent claims. Counsel said:

"I propose to prove that that coarse run of gold was found on Discovery Bench; that they have explored for it below, between that and our ground, and have failed to find it; that they have explored for it below our claim, and have found it; and that, for that reason, in the opinion of mining men, the probabilities are that it passed across the Cascaden placer."

The court held that a discovery could not be established in any such way. Plaintiffs' counsel said he was not trying to establish a discovery in such a way, but that he wished to sustain the evidence of the plaintiffs, that they had found gold and made a discovery on their claim. The court held that such evidence was wholly immaterial and not competent.

Again, a witness, an experienced miner, was asked whether, from his knowledge of the ground, and what he had seen of the development work, and what he knew of the prospects of gold that had been found upon the ground, he would say that an ordinarily prudent mining man would be justified in sinking a shaft to bed rock, with the expectation of finding a pay streak of gold there. Objection to the question was sustained; the court holding that the essential question was whether plaintiffs had made a discovery, and that that was not a question for an expert to testify to, but was one of fact.

Plaintiffs preserved their exceptions, and the point for decision is whether the court erred in rejecting plaintiffs' offers of proof. Inasmuch as the court was satisfied that there was enough evidence as to mineral found to submit the issue of discovery to the jury, we are of opinion that plaintiffs had a right to introduce the evidence offered. While mere possibility that ground claimed contains gold, or that there are mere indications of the existence of mineral in the ground, is not enough to justify a prudent person in expending money and work in exploration of it, yet where the evidence shows the actual existence of gold in the claim, and such evidence is of sufficient weight to submit to the jury upon the issue of discovery, we think the locator has a right to strengthen his proof upon any of the elements which enter into what is comprehended by discovery. In doing so, he may supplement the showing that mineral actually did exist by introducing evidence of the fact that, as a ground of justification for the expenditure of time and money, the adjacent ground in the same gulch is rich in the same mineral, or that adjacent claims were developed into paying mines after development upon similar showings of mineral, or that geological conditions are so similar that, from the character of the mineral discovered, it is reasonable to expect to find mineral in valuable quantities in the exploitation of the ground staked. When we consider that physical conditions vary so in mining regions, it would be very unsafe to lay down hard and fast rules by which the evidence of dis-

covery must be controlled. It is not uncommon to find that certain physical conditions in one district may reasonably lead to the conclusion, if gold is found, that, by following certain slight showings of such mineral, deposits of immense value will be uncovered; while apparently like conditions in other districts may afford neither justifiable expectation, nor even well-founded hope, to the prospector. Such conditions are, nevertheless, evidentiary. They become proper as a means by which the alleged matter of discovery, the truth of which is being investigated, is established or disproved. Of course, there must be a discovery of mineral within the limits of the claim before a valid location thereof can be made; but, as Judge Hawley said in his learned opinion upon quartz locations, in Book v. Mining Co. (C. C.) 58 Fed. 106:

> "It must be borne in mind that the veins and lodes are not always of the same character. In some mining districts the veins, lodes, and ore deposits are so well and clearly defined as to avoid any questions being raised. In other localities, the mineral is found in seams, narrow crevices, cracks, or fissures in the earth, the precise extent and character of which cannot be fully ascertained until expensive explorations are made, and the continuity of the ore and existence of the rock in place, bearing mineral, is established. It never was intended that the locator of a mining claim must determine all these facts before he would be entitled, under the law, to make a valid location."

How is the prospector for placer gold to be guided? He discovers gold, a few cents only to the pan. He knows he is in a gold-bearing placer region, but is unacquainted with any distinct characteristics of the mineral-bearing area in the vicinity where he has made his discovery. Naturally he does not wish to make a location unless the mineral discovered is of sufficient value to justify the belief that the ground will be valuable for placer mining. He is thus confronted with the need of deciding whether or not he is justified in spending his time and money in going ahead with his work, expecting to find gold in paying quantities. To aid him in making up his mind, he will consult miners who are experienced in that particular district. He will find out the special character of the country about, and will at once gather all the knowledge he can readily obtain of how the adjacent claims are paying, where the pay streak is likely to be, and what amount of gold was discovered by the miners who located such other claims and developed them afterwards, and what method of development was adopted; and when he has informed himself upon these matters he will use the information, together with the fact that he has found mineral, as a basis for a justification for action, and, if the justification for his action is well founded, the facts and circumstances upon which it was based are proper to be shown. "It is impossible," says Lindley on Mines, § 437, "to lay down any arbitrary rule to govern all cases as to what may be a sufficient discovery upon which to predicate a location. It is a question of fact, to be determined from a consideration of all the circumstances and surroundings." The same doctrine is recognized by Judge De Haven, speaking for this court, in Lange v. Robinson, 148 Fed. 799, 79 C. C. A. 1, citing authorities. Nevada Sierra Oil Co. v. Home Oil Co. (C. C.) 98 Fed. 673; Shoshone M. Co. v. Rutter, 87 Fed. 801, 31 C. C. A. 223.

We therefore conclude that, inasmuch as there was evidence of gold having been found within the limits of the plaintiffs' claim, the court erred in refusing to permit plaintiffs to show the situation, character, value and mineralogical conditions of adjacent claims, and in refusing plaintiffs' offer to prove by experienced miners that plaintiffs were justified in expending time and money in prospecting and developing the ground claimed as valuable for mineral.

The judgment is reversed, and the cause remanded for a new trial.